Mr. Davis, whenever you wish, and welcome back to your alma mater. Thank you, Your Honor. May it please the Court, I appear on behalf of Kenneth Bailey. In this case, Your Honor, we contend that the evidence was insufficient to sustain a conviction for carjacking. There was no evidence of any threat to inflict bodily harm or death. There was no evidence from which the Court of Jury should have inferred that at the time he gained control of the vehicle that he had the requisite intent to inflict serious bodily harm or death. At the conclusion of the government's case, we made a Rule 29 motion. Again, at the conclusion of all the evidence, we renewed that motion. Judge Tilley, in denying the motions, stated his understanding of what the law was, and we contend that that shows his state of mind in making a ruling on the sufficiency issue. Because he indicated that it was how the victim perceived the actions of Mr. Bailey in determining the intent. And that is not the test we would contend. It is the actions of Mr. Bailey. Assuming you're right that the court's articulation of the test was incorrect, did the government try to help the court articulate a correct legal test? I will contend no, Your Honor. I think the government indicated that they didn't have any cases directly relating to how the court interpreted. But I think the case law is clear that it's not like robbery, regular robbery, when the victim perceives the threat to do bodily harm from the perpetrator. In this case, in carjacking, it's the intent of the perpetrator that is the key. And we would contend that there's no evidence from which it could be inferred that Mr. Bailey had the intent to inflict death or serious bodily harm at the time he obtained possession of the car. The government relied on the car chase that had pursued immediately prior to him wrecking one vehicle, running from that vehicle across the field and approaching Mr. Watkins and his passengers. He ran up to the car. He asked for a ride. Mr. Watkins says, no. He said, I'll pay you for a ride. And Mr. Watkins again said, no. And he jumps into the back seat. The passengers get out. Mr. Watkins says that he felt something hard. Well, he tried to retain possession of his car. Mr. Watkins? Yes. Yes, ma'am. He put the car in reverse and started backing up. And Mr. Bailey jumped in. Mr. Watkins says he placed something hard and cold to the back of his neck. You agree that's the key to this case? Really? The hard and cold? Yeah, the hard and cold. Because arguably, if you remove the hard and cold, I understand the government's argument, but where's the evidence of an intent, a conditional, an intent to impose, conditionally to impose, inflict injury or death? I would condemn there is no evidence. Okay, so the hard and cold, the government argues that the jury, if I understand it, the jury was reasonably entitled, was entitled reasonably to conclude beyond a reasonable doubt that that was a weapon, firearm, I guess, that was going to be used to complete Mr. Bailey's dispossession of Mr. Watkins of that vehicle. It would appear that might be the argument, yeah. Why would that, why, but there doesn't have, just to be clear, there's no firearm element. That's correct. So it's just a matter of some kind of weapon. That's correct. Or something to indicate with which the defendant could have seriously harmed or killed. Not could have, but intended to. Yes, intended to seriously harm or kill the driver. Your Honor, the cases say that just a bluff, something to intimidate the victim is not sufficient. So what was hard and cold, I mean, at the time of the year, it's hard to decide what it was. He never said it felt like the barrel of a gun. He never said that it felt like a knife. He said something hard and cold. So if you hold a finger to somebody's neck and say that's hard and cold, he never said it was metallic. Well, he said a hard and cold, he said Bailey pressed a cold, hard object into the driver's neck and demanded that he drive. Said drive, drive. That's correct, Your Honor. Yeah. So it's a little hard to read that to mean your finger. That's, I mean, it could be anything, Your Honor, at this point. We don't know. And that's the point. And that's, and the reason I was clarifying that is because that is the case, why does that not make an inquiry into the actions that preceded it relevant? That Bailey had driven the wrong way down a one-way street, he'd driven through a park, he'd stolen another car apparently, he'd crashed cars. Why would not the extent to which his prior conduct indicated the lengths to which he was willing to go be probative on his intent at the time this cold, hard object was pressed into the driver's neck? I won't disagree that what took place prior to his approach to Mr. Watkins is relevant to determine whether he wanted to get the car. I would contend it has no probative value as to what he intended or how far he would have gone. You're saying... And that is the key. So you're saying it is not probative on the issue of serious harm? No, ma'am. I would contend it's not. I would contend that it shows a frightened young man that's running to try to get away from the police. And to steal a car. Ask for a ride. No, because he told him... He was going to steal the car. No, well, he did offer to pay for it first. Exactly. What he was trying to do, I mean, if you want to look at the totality of the circumstances as to whether it was intent to harm or merely reckless and sort of, I need to get away, you look at, he said, he offered to pay for it. Exactly. He said, no, then, okay, then he's going to steal it. And I think his actions... Plan B. I think his actions clearly show that he was frightened, he wanted to get away, but I would contend that nothing he did would indicate that had not Mr. Watkins relinquished that vehicle, that he would have inflicted serious bodily injury or death. Why didn't the state just prosecute this as a robbery? That's a good question. I mean, that's a question I've been asking about the federal carjacking statute ever since it was enacted. What is it about our society that the feds have to come in and prosecute a robbery as a carjacking, creating all these very interesting legal issues? I have no idea, Your Honor. Was there any consideration to deferring to the state here to prosecute this? At the time that we got it, it had already... Already been indicted? Already been indicted, Your Honor. So I don't know why the U.S. Attorney's Office took it. But it does present arguments. What do we do with the colden? With the testimony of the person who was trying to hold onto his car? What do you do with it? Yes. If... I understand your point that it's the intent of the defendant. Which an intent, almost by definition, has to be inferred. Does it not? Yes, Your Honor. Unless there's... I'm going to kill you if you don't turn over your car. That's correct, Your Honor. But if that... If the defendant is not that helpful, then you have to... You sort of have to infer intent from the circumstances. To a certain extent, yes, ma'am. Yeah. In answering your question as to what do you do with Mr. Watkins' testimony, I would contend that you do nothing with it as far as determining the intent of Mr. Bailey. Well, you have to... It seems to me you have to do something with it because it would... It's a manifestation of some desperation on his part. Don't you? You don't think so? No, ma'am. I think it shows... It shows the fear that Mr. Watkins had. But why would it... But why? Why would it show... Why would it not show... Why did... Why would Bailey have to touch him at all if all he... He just wants to stay in the car. So what I'm trying to do is put all of this together. I understand. And figure out what we make of that fact along with all the others. The charge in this case was the wrong charge, ma'am. If it was just a pure robbery case... Yeah, okay, but what kind of stuff... I understand what you're saying. If it was a robbery... I'm kind of... I'm trying to... It's not... Put the pieces together. I understand. And you're not helping me either because you don't think they fit. No, ma'am, I don't. I think the charge of robbery... Well, your time has expired, so that's perfect. The government can tell us how they fit. May it please the court. Yeah, what do we make of the cold and hard? The cold hard object. Your Honor, the government contended at trial, and I believe the jury found that to be not only the... And I guess I should begin by saying may it please the court. My name is Kyle Poussaint. I'm here to represent the United States in this matter. To address the court's question as to the sufficiency of the evidence, there are two elements at play with the cold hard object. The first is that the disposition of the car has to be done by force and violence or intimidation. And certainly the government contends that the cold hard object to the back of the neck would fulfill that element and goes to that element. But as with the brandishing of a weapon in many of these cases, the defendant's actions in taking the car are evidence of his intent and how far he would be willing to go. In reviewing the jury's determination in this case, that the defendant was willing... So there's no need for that separate element of intimidation. You're really arguing at odds with the Supreme Court decision in Holloway, aren't you, that the intent element does not render the statute's force or intimidation element superfluous. They can't be one and the same. That's correct, Your Honor. And I don't believe, and obviously wouldn't disagree with Holloway, there are two elements that the disposition, the taking, be done by force and violence or intimidation. In this case, the intimidation being the defendant's behavior and the cold hard object. So your argument to the jury was that the intimidation element clearly was met by the cold hard object. I got that on that element. What was your different argument to the jury to prove intent? The argument for the intent was first that the defendant's behavior in placing that cold hard object to the back of the victim's neck was... Same thing. Yes, and it was not only intimidation, but it was an implicit threat. Same thing. Yes, it was a threat. Well, I guess you do have... I'm going around, and I'm cutting you off, and I'm sorry, but I did it anyway. We're still kind of going around, and you do have the fact that the jury accepted it, the jury made that connection, and that it is entitled to have every reasonable inference drawn in favor, in support of that conclusion. Absolutely, Your Honor. And as the court noted just a moment ago, intent is not always stated. It's many times in favor. Well, it's almost never stated. Yes, Your Honor. How does your argument about what evidence met each of those two elements, when it is the exact same argument, the exact same evidence, not run counter to Holloway and make that intimidation element superfluous? Your Honor, I think that the best way to answer that would be by creating an analogy to a situation that's seen more frequently by the court. These facts and circumstances are not the normal carjacking case that is seen. The cases that are generally... That might indicate that it wasn't a carjacking. Your Honor, the typical fact pattern involves the brandishing of a firearm. And in Franklin, this court's unpublished decision in 2013, and many of the other firearm brandishing cases cited by the defendant in this 28-J, the court noted that the brandishing of the firearm is sufficient to demonstrate the defendant's intent. And in those cases, brandishing of a firearm would meet both the intimidation element as well as be some evidence of the defendant's willingness. Did you try this case? I did, yes, Your Honor. Did you argue to the jury that the jury should infer beyond a reasonable doubt that the coal hard was a firearm? No, Your Honor. You argued it was a weapon. Yes, Your Honor. And why would that be a reasonable inference on these facts? Regardless of what that item was, whether it was a piece of metal from the car, whether it was something from the defendant's pocket, whatever it was, the defendant was using it as a weapon and demonstrating his intent by placing that item to the back of the victim's neck. It was an implicit threat. So even if it was his finger, which I don't think is a specious argument, what month did this occur? April. So it could have been chilly enough that his hand could have been cold. But it wouldn't have been an object. Well, of course it would have been an object. Did you just say it could have been a piece of metal from the car? From the wreck, yes, Your Honor. I thought the witness didn't describe it as metal. He did not. But you did. The description was cold and hard, yes, Your Honor. Right. So where do you – I'm still not understanding how beyond a reasonable doubt, without any evidence of what the item was or even that it was metal, that you can say that first-level inference it was a weapon and therefore second-level inference that weapon provides proof of his intent to use it, third-level inference, to inflict injury or death? Yes, Your Honor. That's building inference on inference on inference on inference in the absence of evidence. But it doesn't have to be at the first-inference level. It doesn't have to be a weapon qua weapon. It can just be something that could cause harm. Now, presumably it couldn't be a finger. Your Honor, in fact, the court, this court, has noted in United States v. Moore, 2010, unpublished, cited by the defense in their 28-J, that no weapon at all is required. The threat and the intimidation element is required and some showing of the defendant's intent is required. Exactly. We all agree on that. Yes. I don't think there's any disagreement among the five of us on any of that. Yes, Your Honor. The question is how do you get, beyond a reasonable doubt, out of hard coal to the back of the neck under circumstances where the guy has previously, a moment before, offered to pay? Now, I'm not taking that seriously, but, in fact, he offered to pay. The overwhelming evidence, it seems to me here, is that he wanted to get away, he wanted Mr. Watkins to drive him away, and if Mr. Watkins wasn't going to drive him away, he was going to steal this car. And, by the way, if a guy gets in my car and says, drive, to me that's plenty of intimidation. Some stranger gets in your car and says, drive, drive, drive, I'm going to be intimidated. So you don't need the hard coal to prove intimidation. I think you answered Judge Stacker more generously than you needed to. I think the whole circumstance is rife with intimidation. The question is, where's the proof beyond a reasonable doubt that he had the specific intent to kill or inflict serious bodily injury in seizing this vehicle? I'm looking for it in the record, and I'm having a hard time finding it. Yes, Your Honor. This court described that question as the difficult question of what the defendant would have done not had the victim abandoned the car, but what the defendant would have done had the victim resisted. And in making that determination, there are two things the government points to. One, the fact that the defendant was willing to place this cold hard object to the back of the victim's neck, whatever it was. With all of the implied threat that that carries with it. But second, the other actions of the defendant in and around the time that he took the car, the government can show how far he was willing to go that day. But he didn't, you haven't showed that he injured anybody else. You showed recklessness. Is that enough to prove intent? The question, if the question is how far he was willing to go, the fact that he was willing to endanger his own life, his passenger's lives, the five-year-old child in his car's life, and everyone else's lives. Including all of the people on the heavily trafficked street that he was driving down the wrong way on a one-way street. Absolutely. I take that. I just... Why didn't the state prosecute this as a robbery? That's a good question, Your Honor. You kidding? You're the prosecutor. As with many cases like Hobbs, there's both a state and a federal predicate. The state did take, if the court looks at the pretrial sentences report and joint appendix number two, the state did take some charges arising out of this incident. There was conviction with the same date of offense for the defendant possessing with intent to distribute narcotics and fleeing from the cops. But the robbery charges were dismissed and they were prosecuted here in our district, in our jurisdiction. Why? Duh. Why? Is that above your pay grade? Yeah, you're not required to answer that. You're not required to answer that. I mean, we understand. Yeah, we do. Thank you, Your Honor. The government does contend that the elements were met here, and the jury did so fine. Fine. Incredibly. I mean, I think you're making... terrible, strong arguments. It's just very, very difficult. It is unusual. And it's hard to understand the need to go that far when it is that, it does become that difficult. And, Your Honor, it's difficult in the same way that when we're talking about intent, it's always difficult to look to the circumstances to infer an individual's intent. But certainly, the defendant's actions on this date do show that he was willing to endanger others, to endanger himself. And by extension, the government would argue that he would show no regard for the safety of the victim, Mr. Watkins, in this case. Agreed. You just described reckless behavior. And that was sort of where I was going. That gets you shoving Mr. Watkins out of the car, which he actually tried to do. Well, you take our point. You see the conundrum here. There is an unusual set of circumstances. This Court, generally, as I know to both sides, have cited cases where intent has been found. Generally speaking, that involves firearm. There is the case of United States v. Moore that is cited. But it doesn't have to. It doesn't even have to involve what is technically a weapon. No. In fact, in Moore, the defendant simply grabbed the victim by the arms and pushed him back into the car. But in that case, they expressed their intent verbally and said they would kill him. In this case, we are stuck with the defendant's actions to infer his intent, which, although not stated or implied, they are implied very clearly through his reckless behavior and also his choice to place that object on the back of the victim's neck. There is a second issue that has been raised in this case. I'm sorry. Before you move on, can you remind us how long was the chase? It was a brief chase. How long was the chase? Mr. Watkins jumps out of the car. He comes around. Bailey gets in the driver's seat, right? Yes. Just that chase. Pulls off. The officer indicated that the defendant turned out of the parking lot onto Cecil Street and then down Rigsby and described the defendant passing a skateboard park, police station, bars, restaurants, and food trucks before crashing into another park. So you don't know how long. The description that's described is of several blocks. It does not appear to be a chase of miles. Three, four, five blocks. Yes, Your Honor. Watkins never sees a weapon. Does not see a weapon. Does not see a gun. When asked about a weapon, Your Honor. Does not see a gun. No, Your Honor. There's no gun found in the car. That's correct. There's no weapon found in the vehicle. That's correct. And there's no observation of something being tossed from the vehicle. That's correct, Your Honor. When Mr. Watkins was asked. And nobody who was with him that day saw him have a gun, right? The passenger, one of the two passengers that was with him described being with him that day and not seeing a weapon. No weapon. That's correct. Mr. Watkins, when asked for more detail about the cold hard objects placed at the back of his neck, described to the court that he felt that his life was such in danger that he wasn't going to take the time to turn around to see what was being placed at his neck. He basically abandoned his vehicle. I wouldn't look for the gun either. No, I take your point. It's what we can infer from the circumstances at that time. Yes, Your Honor. And there is a second issue that has been raised, that of the sentencing computation points for defendants prior conviction of possession with intent to sell and deliver marijuana. The government contends and provided supplemental authority in the form of United States v. Barlow that was decided since briefing, and the government contends that that case is fairly dispositive of the issue. So unless there are questions the court has on that issue or further questions as to the issue of sufficiency of the evidence, the government would simply ask that this court affirm the judgment of the district court. Thank you. Thank you. Mr. Davis. Just briefly, the evidence showed that one of the passengers in the vehicle, the first vehicle, described Mr. Bailey as wearing blue and white gym shorts and had been with him all day, had not observed any weapon. Mr. Watkins described Mr. Bailey as having shorts. So I would continue on it that, one, there's no evidence to show that he was dressed in a manner to conceal a firearm, and there's no question that there was intimidation. But that's not the key. The key is his intent. And I'll still contend that what took place with him running from the police and crashing the first vehicle and after getting Mr. Watkins' car and driving away fast had nothing to do with showing his intent at the time he obtained Mr. Watkins' car, a vehicle, that he intended to inflict death assurance while at home. Thank you. Mr. Davis, did you try this case? Yes, sir, I did. How'd you lose this case? I don't know. I don't know yet. I think part of it, I thought I was going to win it at the Rule 29 until Judge Tilley stated his interpretation of the law. And then with Mr. Pousson's excellent closing, I knew I was doomed. Okay. Thank you. I didn't mean anything pejorative about my question. I understand. Thank you very much. We'll come down in Greek Council and proceed directly to the last case.
judges: Allyson K. Duncan, Stephanie D. Thacker, Andre M. Davis